## Philip BOREN *v.* Bill QUALLS

84-113                                                    680 S.W.2d 82

Supreme Court of Arkansas
Opinion delivered November 13, 1984
[Rehearing denied December 17, 1984.]

*Joseph Wm. Segers, Jr.,* for appellant.

*William A. Storey,* for appellant.

STEELE HAYS, Justice. Bill Qualls brought this action below against Philip Boren for assault and battery allegedly occurring outside a Fayetteville tavern in January, 1982. Each blamed the other for provoking the fight. The jury settled that issue by awarding Qualls $6,458.02 in compensatory damages and $5,000 in punitive damages. Boren has appealed. We affirm the judgment.

For reversal, Boren insists the trial court improperly denied him the right to impeach Qualls by showing he had stated under oath he had never been arrested or convicted of a felony, or a misdemeanor, when in fact he had been arrested twice for rape and once for theft of property and had been convicted of careless driving. Specifically, Boren contends

that in interrogatories he asked Qualls if he had ever been "arrested and/or convicted" of a felony and the answer was "no." The answers were signed by Qualls' attorney, but were verified by Qualls as being true. Additionally, Boren points to Qualls' affidavit, attached to a motion in limine, stating he had never been "convicted of any crime, either felony, misdemeanor or an act involving dishonesty or false statement."

The admissibility in general of felony arrests and misdemeanor convictions for impeachment purposes need not be examined, as Boren concedes that under Unif. R. Evid. Rule 609 the trial court's exclusion of these matters would ordinarily be correct[1]. However, he submits they became admissible for impeachment when Qualls denied their existence under oath. Boren offers no authority to support his argument on this point, he simply asserts that he should have been permitted to show that Qualls swore he had never been arrested, when in fact he had three felony arrests and a misdemeanor conviction.

We can eliminate part of the problem by observing that the affidavit gives no support to Boren's position. It does not mention arrests, it merely states that Qualls has never been *convicted* of a felony, which Boren does not dispute, or of "a misdemeanor or an act involving dishonesty or false statement." Boren argues that Qualls has a misdemeanor conviction for careless driving and hence, his affidavit is false. But that alleged offense was never proffered and we have said a number of times a proffer is essential. *Jones* v. *State,* 283 Ark. 308, 675 S.W.2d 825 (1984); *Farrell* v. *State,* 269 Ark. 361, 601 S.W.2d 835 (1980); *Marion* v. *State,* 267 Ark. 345, 590 S.W.2d 288 (1979); *Duncan* v. *State,* 263 Ark. 242, 565 S.W.2d 1 (1978).

With the affidavit aside, all that remains is the single interrogatory, "[p]lease state whether you have ever been arrested and/or convicted of any crimes." The answer was

---

[1]Cases holding that mere arrests, as opposed to convictions, of crime may not be used for impeachment are: *Moore* v. *State,* 256 Ark. 385, 507 S.W.2d 711 (1974); *Polk* v. *State,* 252 Ark. 320, 478 S.W.2d 738 (1972); *Thacker* v. *Hicks,* 213 Ark. 822, 212 S.W.2d 713 (1948).

"no." As we have said, the answers were signed by Qualls' attorney, but their truth was verified by Qualls on a separate form.

It is obvious this problem has arisen because the interrogatory employed an imprecise term, "and/or," when precision was called for. The phrase has been so soundly criticized as to have been driven almost entirely from current usage. At best it has been labelled "equivocal," "obscure" and "meaningless," at worst "slovenly," "improper" and "a linguistic abomination." (See cases cited in Words and Phrases, Perm. Ed., pages 640 to 647). It has no place in modern practice, least of all in discovery interrogatories. A list of condemnors includes a number of our own cases. *Spears v. State*, 264 Ark. 83, 568 S.W.2d 492 (1978); *Heath v. Westark Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 953 (1976); *Guerin v. State*, 209 Ark. 1082, 193 S.W.2d 997 (1946).

The short of the matter is the phrase may be interpreted as either conjunctive or disjunctive, and it is plain Qualls, no doubt advised to do so, chose the conjunctive use so as to interpret the interrogatory as, "have you ever been arrested *and* convicted of any crime," to which he could truthfully say, "no." The record confirms our view: when asked in-chambers if he recalled answering the interrogatory, he said, "And/or, yes sir[2]."

We do not suggest discovery should be treated as a game of cat and mouse, or that one litigant should be rewarded by the artful avoidance of truthful answers to proper questions. But that is not the issue before us. Our task is to determine whether (as best we can with no abstract of relevant in-chambers proceedings) the evidence of false swearing was so clear the trial court abused its discretion by excluding it for impeachment purposes. We think not under all the circumstances.

Unif. R. Evid. 608(b) speaks to the issue to this extent: it empowers the trial judge in his discretion to permit

---

[2]Record, P. 104.

specific instances of conduct to be inquired into on cross-examination for purposes of attacking credibility, provided those matters are probative of truthfulness or untruthfulness. Whether the ruling in this instance was based on a belief Qualls answered the interrogatory truthfully, albeit technically, or that the alleged arrests had no bearing on truthfulness, or that prejudice outweighed probative value, or even that the proof of the alleged arrests was questionable, cannot be determined without going to the record. In the end we cannot say the trial judge erred in refusing it for impeachment purposes.

Next, appellant contends he should have been permitted under Unif. R. Evid Rule 404 to show the rapes as evidence of violent character. But Rule 404 deals with character evidence, proved *not* by specific instances of conduct, as here proposed, but by reputation or opinion, as provided in Rule 405. Moreover, the Rule states that character evidence is not generally admissible to prove that one acted in conformity with such character on a particular occasion. In *Pursley* v. *Price,* 283 Ark. 33, 670 S.W.2d 448 (1984), we said Rule 404 did not permit the introduction of evidence that Pursley had a tendency for violence when drinking, but the proof became admissible because Pursley opened the door by first offering proof he was not of a violent nature. See also *Adams* v. *State,* 93 Ark. 260, 124 S.W. 766 (1910).

Another point is the trial court erred in allowing Dr. Robert Dow, a Fayetteville neurologist, to testify that dental, hospital and x-ray services were reasonable and necessarily incurred by Qualls as a result of the fight. After establishing Dr. Dow's medical experience, counsel for appellee submitted his qualifications as an expert, and he testified concerning Qualls' complaints from the trauma. He said he was generally familiar with the cost of x-ray's and dental work in the Fayetteville area and we are unable to say the trial court abused its discretion in permitting him to express an opinion on these matters. See *Dildine* v. *Clark Equipment Co.,* 282 Ark. 130, 666 S.W.2d 692 (1984).

Appellant also maintains the trial court should have granted a motion for mistrial on the ground that a defense witness was intimidated by Qualls' attorney. The witness was with Boren when he and Qualls fought and supported Boren's version of the incident. He testified at an in-chambers hearing on the motion that he was an employee of Qualls' attorney, William Storey, who was surprised to see him at the trial. The witness said at first he thought he was being intimidated and his job might be in danger. He later said Storey had not tried to prevent him from testifying and had said he would not hold it against him. In the end, the witness said he was not intimidated and would testify only to the truth. There is no suggestion he did otherwise. We find no basis to overturn the trial judge's denial of a mistrial. *Back* v. *Duncan,* 246 Ark. 494, 438 S.W.2d 690 (1969).

The final point is that there is no evidence to support submitting the issue of punitive damages to the jury. No objection to the punitive damage instruction appears in the abstract, but aside from that, it can hardly be questioned that punitive damages are recoverable by one who suffers injury as a result of blows intentionally inflicted. See *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972).

In response to the dissenting view, we do not go to the record to reverse. *First National Bank of Brinkley, Ark.* v. *Frey,* 282 Ark. 339, 668 S.W.2d 533 (1984); *Routen* v. *Van Dyse,* 240 Ark. 825, 402 S.W.2d 411 (1966); *Tenbrook* v. *Daisy Mfg. Co.,* 238 Ark. 532, 383 S.W.2d 101 (1964).

The judgment is affirmed.

HICKMAN, J., concurs.

HUBBELL, C.J., and DUDLEY, J., dissent.

DARRELL HICKMAN, Justice, concurring. The debate between my colleagues is interesting but both opinions overlook that the appellant did not even abstract the basis of the discussion: the affidavit. I would affirm under Rule 9. Ark. Sup. Ct. R. 9.

ROBERT H. DUDLEY, Justice, dissenting. Credibility was the key issue in this trial as each party testified the other started the fight. It was crucial that each party be allowed as full an impeachment of the other's credibility as the rules of evidence allow. Since the trial court erroneously excluded evidence to impeach the credibility of the appellee, I would reverse and remand for a new trial.

Prior to the trial, in response to an interrogatory, the appellee answered under oath that he had "never been arrested and/or convicted of any crimes." At trial, in order to impeach the credibility of appellee, appellant sought to cross-examine the appellee about the falseness of his sworn statement. The trial court erroneously sustained appellee's objection. Appellant proffered evidence to prove false swearing by showing that appellee had been arrested for rape in 1980, for theft by receiving in 1981 and for rape in 1982. False swearing is probative of character for untruthfulness and, unless that probative value is substantially outweighed by danger of unfair prejudice, may be inquired into on cross-examination. Rule 608(b), Unif. Rules of Evid., Ark. Stat. Ann. § 28-1001 (Repl. 1979 and Supp. 1983); *Gustafson v. State,* 267 Ark. 278, 590 S.W.2d 853 (1979); *Rhodes v. State,* 276 Ark. 203, 634 S.W.2d 107 (1982). The trial judge did not rule that the probative value of the false swearing was outweighed by the danger of prejudice. *See* Ruel 403, Unif. Rules of Evid. Instead, he simply erroneously sustained objections to the questions.

The majority opinion does not directly address the issue of false swearing, even though it is the first point of appeal. Instead, it recites that the phrase "and/or could have been interpreted as conjunctive or disjunctive" and "it is plain Qualls [appellee], no doubt advised to do so, chose the conjunctive . . ." and therefore, according to the majority the evidence of false swearing was not before the trial court.

Before anything else, each person who reads the majority opinion and this dissenting opinion should be aware that the appellee has never argued, or even

mentioned, at trial or on appeal, nor did the trial court mention, the distinction between conjunctive and disjunctive phrasing; that rationalization for the erroneous ruling is given for the first time in the majority opinion. To demonstrate the point, and to emphasize that there was no misunderstanding at trial, and this is nothing other than an erroneous evidentiary ruling, the following is quoted directly from appellee's brief:

> The appellant sought to elicit testimony concerning prior acts of misconduct by appellee to impeach his credibility. The Court excluded the testimony on the basis on Rule 609, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979). This rule states that "for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year . . . and the court determines that the probative value of admitting this outweighs its prejudicial effect to a party or witness, or (2) involved dishonesty or false statement, regardless of punishment."

> This rule applies to convictions of crimes. The theft and rape incidents referred to by the appellant were not convictions. So the trial court properly excluded cross-examination testimony on specific acts which did not result in conviction.

Perhaps nothing demonstrates as clearly as the actual trial record that there was no misunderstanding, but only an erroneous ruling:

> Mr. Segers: [appellant's attorney] Your Honor, the following evidence is proffered for the purpose of impeachment purposes only.

> The Court: Alright, let the record show that the jury has been excused for the lunch period, and this testimony is without the hearing of the jury. Proceed.

Q. Mr. Segers: Mr. Qualls, do you recall signing an interrogatory, — answers to interrogatories, on the 22nd day of September, 1983, where I asked you specifically, "Please state if you have ever been arrested and/or convicted of any crimes?" and, you answered: "No."?

A. And/or yes, sir.

Q. Mr. Segers: *O.K., specifically, had you not been arrested for theft by receiving in August of 1981?*

Mr. Storey: [appellee's attorney] *I object, Your Honor*

The Court: *What was the question?*

Mr. Segers: *The question was: Is it not true that you were arrested in August of 1981 for theft by receiving?*

The Court: *I will sustain the objection.*

Mr. Segers: *For the purpose of the record, we would like to proffer that if he had answered the question, the answer would be, yes.*

Q. Mr. Segers: *Were you not arrested in North Little Rock on May the 23rd on 1980 on a charge of rape?*

Mr. Storey: *Objection, Your Honor:*

The Court: *Sustained.*

Mr. Segers: *For the purpose of the record, had he answered correctly and honestly, the answer would be: Yes.*

Q. Mr. Segers: *Were you not arrested on July the 16th, 1982 for the charge of rape?*

Mr. Storey: *Objection, Your Honor.*

Mr. Segers: *Your Honor, let the record show that if*

*the witness had answered fairly and honestly, the answer would be in the affirmative.*

Again, to clearly demonstrate that there was no misunderstanding, and to clearly show the issue of false swearing, after the proffer, appellant's counsel stated:

Mr. Segers: It is the purpose of introducing this evidence not for introducing as to Rule 609 of the Arkansas Rules of Civil Procedure, but only to introduce the evidence to show the truth and veracity of Mr. Qualls and concerning the fact that he has sworn under oath before this court in writing and verbally that he has never been convicted of any crimes, either felony or misdemeanor, and he, in fact, has. I think that his testimony is admissible testimony that goes to impeaching his credibility. If he had signed an affidavit saying he had never been convicted of a felony, or an act involving dishonesty or a false statement, then, that would be cover. (sic) That would be proof, and there is nothing that this court could do or I could do to introduce the testimony; in that he has, in fact perjured himself in writing and verbally, — I, — I think it's admissible.

\* \* \*

Mr. Segers: Now, Your Honor, I am not arguing with the court. Please believe me, I just want to make my record.

The Court: Sure, sure.

Mr. Segers: And, that is that we are not trying to introduce that he committed a crime. It is our opinion that it would be different had the evidence to it said he had paid the bills, and I could come in here and show that he did not pay the bills, which would go to his honesty. He has said, I have never done something, and I think it's admissible, — not as to the crime. I agree wholeheartedly with the court that the crime in and of itself could not be admissible.

The fact that he was on the stand and made a statement under oath that I can show is not true, that would go to his truth and veracity, and would impeach him. Thank you.

There was no misunderstanding over the disjunctive or conjunctive use of the phrase "and/or" and the issue of false swearing was clearly presented. The trial record demonstrates that each person involved understood that the appellee had sworn that he had never been arrested for any crimes and that the affidavit so stating constituted false swearing. The trial judge erred in excluding evidence of false swearing. It was prejudicial to appellant since he was not allowed to fully impeach the credibility of appellee. Since credibility was the key to the trial, the erroneous ruling deprived appellant of a fair trial. I would reverse and remand for a new trial.

HUBBELL, C.J., joins in this opinion.